

FILED
2011 Mar-11 PM 01:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| **DEWAYNE WHITE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 4:09-cv-02384-JEO |
| ) | |
| **HARTFORD LIFE AND ACCIDENT** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

The above-styled action is brought by the plaintiff, Dewayne White (hereinafter "Plaintiff"), against the defendant, Hartford Life and Accident Insurance Company (hereinafter "Hartford"), premised on Hartford's refusal to pay long-term disability benefits to Plaintiff.  (*See* Notice of Removal (doc. 1), Exh. A).[1]  The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c).  (Doc. 12).  It is before the court on the Plaintiff's "Motion for Summary Judgment on Standard of Review."  (Doc. 19).  The motion has been extensively briefed and is now subject to the court's review.  Upon consideration, the court finds that the motion is due to be denied.

**I.   FACTUAL AND PROCEDURAL HISTORY**

Magotteaux, Inc., is a global supplier of comminution products and services to the

---

[1] Exhibit "A" is Plaintiff's Complaint, originally filed in the Circuit Court of Etowah County, Alabama, followed by all other state court filings in the present case prior to removal.

References to "Doc. ___" are to the documents as numbered by the Clerk of the Court in the court's record of the case.

mining, cement, quarries, recycling and coal power industries.[2]  (http://www.magotteaux.com). Effective January 1, 2002, Magotteaux, Inc., sponsored an employee benefits plan whereby it provided long term disability insurance coverage to its full-time, salaried employees through Continental Casualty Company ("CCC").  Magotteaux, Inc., paid 100% of the premium cost for this plan.  (Maggio Aff. ¶ 3; Maggio Aff. Exh. 1).

When the plan came into effect, Plaintiff was employed by Magotteaux as a No Bake Group Leader.[3]  He acquired long term disability insurance coverage from CCC through the plan sponsored by Magotteaux.  He worked for Magotteaux until September 18, 2003.  Around this time, Plaintiff was diagnosed with leukemia and osteoarthritis.  After completing a 90-day elimination period, he began to receive long-term disability benefits on December 18, 2003. (Doc. 19, Exh. B pg. 3 of 6).

The policy provided that Plaintiff was eligible to receive benefits for 24 months, if he was not gainfully employed during that time and was unable to perform the "material and substantial duties" of his "regular occupation."  After 24 months, Plaintiff qualified for continuing benefits only if he was unable to engage in any occupation for which he was qualified.  (*See* doc. 19, Exh. A pg. 1 ("Occupation Qualifier")).

On November 30, 2003, Hartford purchased the Group Benefits division of CCC, which administered Plaintiff's long-term disability insurance policy, and began operating that concern under the name CNA Group Life Assurance Company ("CNAGLA").  In connection with this

---

[2]  "Comminution" is defined as the reduction of a physical object "into minute particles: pulverize." MERRIAM-WEBSTER DICTIONARY 230 (11th ed. 2005).

[3]  The record contains no description of Plaintiff's job duties as a No Bake Group Leader, nor did the court locate any through the Magotteaux, Inc., website.

purchase, CNAGLA agreed to reinsure certain policies issued by CCC, including the Magotteaux-sponsored policy. (Maggio Aff. ¶ 4). Pursuant to an Administrative Services Agreement between CNAGLA and CCC, CCC appointed CNAGLA as its "lawful attorney in fact with respect to [CCC's] rights, duties, privileges and obligations ... relating to the [Magotteaux-sponsored policy]." (Soler Aff. ¶ 4). CNAGLA then reissued the policy, effective January 1, 2004. (*Id*.; Maggio Aff. Exh. 2). The reissued policy provided that

> [t]he plan administrator and other plan fiduciaries have discretionary authority to determine Your eligibility for and entitlement to benefits under the Policy. The plan administrator has delegated sole discretionary authority to CNA Group Life Assurance Company to determine Your eligibility for benefits and to interpret the terms and provisions of the plan and any policy issued in connection with it.

(Maggio Aff. Exh. 2 pg. 24).

On a subsequent date not specified in the record, Hartford began to operate CNAGLA under the name "Hartford Life Group Insurance Company." Hartford issued to all beneficiaries of the Magotteaux-sponsored plan a "name change" endorsement, with a cover letter that explained

> [t]he *CNA Group Life Assurance Company* was acquired by the Hartford. This addition to The Hartford family of companies was renamed to *Hartford Life Group Insurance Company*. If the reference *CNA Group Life Assurance Company* appears in your policy and certificates, the endorsement that follows this page changes the name to *Hartford Life Group Insurance Company* wherever that reference occurs.

(Maggio Aff. Exh. 3). The following page was titled "ENDORSEMENT: Change in Name of Underwriting Company." It provided that

> [t]his endorsement is made a part of the policy or certificate to which it is attached. It amends the policy or certificate; and any application, rider or other form attached to the policy or certificate; as stated below:
>
> The name *CNA Group Life Assurance Company* is revised to *Hartford Life Group Insurance Company* wherever it appears.

>	The policy or certificate remains the same in all other respects.
>
>	This endorsement takes effect on the date the name of the underwriting company changed in the state in which the policy was issued and expires at the same time as the policy or certificate to which it is attached.
>
>	All future correspondence should be sent to Hartford Life Group Insurance, 7400 College Blvd, Suite 600, Overland Park, KS 66210.

(*Id.*)[4]

On December 31, 2006, Hartford Life Group Insurance Company was acquired by Hartford Life and Accident Insurance Company, the named defendant in this case. Hartford remained the only surviving corporate entity. (Soler Aff. ¶ 9).

Plaintiff received benefits under the Magotteaux-sponsored plan until October 2008. On October 31, 2008, Hartford notified him via letter that he no longer qualified for benefits under the plan. (Doc. 19, Exh. B). It explained that, as of December 18, 2005 – 24 months after he began to receive benefits – Plaintiff was ineligible for continuing benefits unless Hartford determined that he was unable to engage in any occupation for which he was qualified. Having reviewed Plaintiff's medical record from 2003 through October 2008, Hartford discovered that Plaintiff's leukemia was in remission, and that two of his treating physicians believed he was capable of performing full-time, sedentary work. Hartford then consulted a vocational expert, who determined that Plaintiff could work as a "stuffer" and a "waxer." Premised on these findings, Hartford concluded that Plaintiff's benefits were due to be terminated effective October

---

[4] Neither the endorsement nor the cover letter accompanying the same, nor any other portion of the record, contains a date upon which the name change allegedly became effective as to the policy in question here. The Texas Department of Insurance website indicates that July 28, 2004 was the date of the name-change in that state. (http://apps.tdi.state.tx.us). The policy at issue in this case was issued in Tennessee. The court has been unable to discern the effective date specific to Tennessee, but assumes said date was approximately July 2004.

31, 2008. (*Id*.)

Plaintiff pursued all administrative remedies available to him through Hartford and, on October 22, 2009, filed a one-count Complaint against Hartford in the Circuit Court of Etowah County. (Notice of Removal (doc. 1), Exh. A at 8-9). Hartford removed the case to this court on November 30, 2009. (Doc. 1). On July 22, 2010, Plaintiff filed the pending "Motion for Summary Judgment on Standard of Review," to which Hartford responded in opposition on August 6, 2010. (Docs. 19, 21, respectively). Plaintiff filed a reply brief on August 11, 2010, to which Hartford filed a Sur-Reply on August 20, 2010. (Docs. 22, 24, respectively). As previously stated, the motion has been fully briefed and is now under submission.

## II.  ANALYSIS

Plaintiff challenges Hartford's decision to terminate his benefits under 29 U.S.C. § 1132(a)(1)(B). That provision states the following:

> **(a)  Persons empowered to bring a civil action**
>
> A civil action may be brought –
>
> (1)  by a participant or beneficiary –
>
> (B)  to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

In his Motion for Summary Judgment, Plaintiff argues that the court should review Hartford's decision by applying the *de novo* standard of review. This standard offers less deference to Hartford's decision than the arbitrary and capricious standard, which Hartford urges the court to apply.

"ERISA does not set out standards under which district courts must review an

administrator's decision to deny benefits." *Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352, 1355 (11th Cir. 2008). In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 957-58, 103 L. Ed. 2d 80 (1989), the Supreme Court instructed that "[c]onsistent with established principles of trust law ..., a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See also Marecek v. BellSouth Telecommunications, Inc.,* 49 F.3d 702, 705 (11th Cir. 1995) (same); *Bedinghaus v. Modern Graphic Arts,* 15 F.3d 1027, 1029 (11th Cir. 1994) (same).

As previously set forth, the reissued policy -- under which Plaintiff received benefits from January 1, 2004 until October 31, 2008 -- provided that

> [t]he plan administrator and other plan fiduciaries have discretionary authority to determine Your eligibility for and entitlement to benefits under the Policy. The plan administrator has delegated sole discretionary authority to CNA Group Life Assurance Company to determine Your eligibility for benefits and to interpret the terms and provisions of the plan and any policy issued in connection with it.

(Maggio Aff. Exh. 2 pg. 24). Page 25 of the reissued policy identified Magotteaux as the plan administrator. Therefore, it is clear that Magotteaux expressly delegated its discretionary authority to CNAGLA in the reissued policy.[5]

Plaintiff, however, maintains that Hartford terminated his benefits, not CNAGLA.

---

[5] To the extent Plaintiff argues that Magotteaux could not have delegated its discretionary authority to CNAGLA because Magotteaux was not identified as the plan administrator in the above-quoted text, the court disagrees. Aside from the policy language on page 25 that clearly identifies Magotteaux as the plan administrator, the Eleventh Circuit has acknowledged that a plan administrator, if not otherwise identified in the policy, is the plan sponsor and/or the employer. *Rosen v. TRW, Inc.*, 979 F. 2d 191, 193 (11th Cir. 1992) ("If the plan does not designate an administrator, the employer can be deemed to be the plan administrator"), citing 29 U.S.C. § 1002(16) ("The term 'administrator' means -- (i) the person specifically so designated by the terms of the instrument under which the plan is operated; [or] (ii) if an administrator is not so designated, the plan sponsor[.]").

Consequently, even if the court recognizes Magotteaux's attempt to delegate its discretionary authority to CNAGLA -- which the court does -- Plaintiff argues that Hartford has not been authorized to exercise that authority on behalf of CNAGLA. He points out that discretionary authority may not be implied from the terms of a policy, but must be expressly delegated. Because Magotteaux expressly delegated its discretionary authority to CNAGLA, not Hartford, Hartford's decision to terminate Plaintiff's benefits was made without discretionary authority to do so, and should be reviewed by this court *de novo*.

     Plaintiff is correct in arguing that an insurance policy or benefits plan must expressly delegate discretionary authority before the arbitrary and capricious standard of review is held to apply. *Kirwan v. Marriott Corp.*, 10 F.3d 784, 788 (11th Cir. 1994); *Moon v. American Home Assurance Co.*, 888 F.2d 86, 88 (11th Cir.1989); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 38-39 (11th Cir.1989). It is, however, misapplied to the facts of this case. The question here is not whether Hartford was expressly delegated discretionary authority by the original terms of the reissued policy. The parties agree that the terms of that policy provided discretionary authority to CNAGLA. The question here is whether Hartford acquired that authority when it purchased CNAGLA.

     Hartford maintains that it did acquire said authority, along with all of CNAGLA's rights and obligations, when it purchased CNAGLA. Hartford cites to several cases that support this argument, all of which are directly on point with this action. In *Simonia v. Hartford Ins. Co.*, 606 F. Supp. 2d 1091 (C.D. Cal. 2009), the district court considered a factual scenario identical to that before this court. The plaintiff had received long-term disability benefits from Hartford for 24 months because he was unable to perform the material and substantial duties of his regular

occupation. At the end of 24 months, Hartford concluded that the plaintiff was able to perform other jobs for which he was qualified, and terminated the plaintiff's benefits. The plaintiff moved the court to review Hartford's decision *de novo*. In denying the plaintiff's motion, the court cited to *Giannone v. Metropolitan Life Insurance Co.*, 311 F. Supp. 2d 168 (D. Mass. 2004), for the proposition that Hartford "stepped into the shoes" of CNAGLA when it purchased that entity. Hartford could, therefore, exercise the same discretionary authority conferred on CNAGLA by the reissued policy. *See also Williams v. Hartford Life and Acc. Ins. Co.*, 2009 WL 3127761 (S.D. Ohio, Sept. 25, 2009) (finding, on identical set of facts, that Hartford acquired CNAGLA's discretionary authority when it purchased CNAGLA's stock); *Anderson v. Quad/Graphics Inc. Group Disability Income Ins. Plan*, 2010 WL 2541021 E.D.Wis. (June 21, 2010) ("under ERISA case law, a successor corporation to the administrator of a plan or the fiduciary of the plan 'steps into the shoes' of its predecessor and acquires the obligations and powers conferred by the plan."), citing *Giannone, supra*; *Williams, supra*; *Hunley v. Hartford Life & Accident Ins. Co.*, 2010 WL 1708718 (M.D. Fla. Apr. 26, 2010) (policy provided CNAGLA with discretionary authority to administer plan; Hartford acquired CNAGLA's rights and obligations under policy when it purchased all of CNAGLA's stock, including CNAGLA's discretionary authority to determine eligibility for benefits). Considering nearly identical facts, and the same legal question posed to this court, the courts in *Simonia*, *Anderson*, *Williams*, and *Hunley* concluded that Hartford has acquired CNAGLA's discretionary authority. Plaintiff makes no attempt to distinguish these cases from the current action, nor does he argue that they should not be considered persuasive in this context.

   Plaintiff does cite to other cases which, according to him, support his position that

Hartford did not acquire CNAGLA's discretionary authority when it purchased CNAGLA. With one exception, however, none of these cases address the issue that is before this court -- whether a corporate successor acquires the discretionary authority delegated to its predecessor in interest under an insurance policy. *See Anderson v. Unum Life Ins. Co. of America*, 414 F. Supp. 2d 1079 (M.D. Ala. 2006); *McKeehan v. Cigna Life Ins. Co.*, 344 F.3d 789 (8th Cir. 2003); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37 (11th Cir. 1989); *Moon v. American Home Assur. Co.*, 888 F.2d 86 (11th Cir. 1989); *Kirwan v. Marriott Corp.*, 10 F.3d 784 (11th Cir. 1994); *Walden v. CCC*, 4:05-cv-01938-HGD (doc. 34, June 1, 2007). While these cases do stand for the general proposition that discretionary authority must be expressly granted by an insurance policy, they are otherwise unhelpful in answering the question before this court1.

In *Walden*, the court did consider whether Hartford acquired CCC's discretionary authority when it purchased CNAGLA, and found that it had not. However, *Walden* was decided on the basis of a complete lack of evidence that the plan administrator had delegated discretionary authority to CNAGLA before Hartford purchased it. The policy before that court provided that CCC, not CNAGLA, had discretionary authority to determine eligibility for benefits. Unlike the present case, the policy in *Walden* was never reissued with the express provision that CNAGLA had discretionary authority in place of CCC. (*See id*. pg. 5 ("At the time the Policy was obtained by plaintiff, CCC had entered into a contract with [CNAGLA] to have the Policy administered by CNA. Although CNA was a company owned by CCC at the time the Policy was issued, CCC reserved the discretionary authority to determine benefits eligibility to itself alone.") Consequently, when Hartford acquired CNAGLA's rights and obligations under the policy in *Walden*, those rights and obligations did not include discretionary

9

authority to determine benefits eligibility, which remained with CCC. As stated *supra*, in the present case, the policy initially issued by CCC was reissued on January 1, 2004. The reissued policy contained an express grant of discretionary authority from Magotteaux, Inc., to CNAGLA, not CCC. The initial, CCC-issued policy was terminated as of the date the reissued policy came into effect. By purchasing CNAGLA, Hartford obtained CNAGLA's rights and obligations as stated in the reissued policy, including its discretionary authority to determine benefits eligibility.

### III. CONCLUSION

The court finds *Walden* distinguishable and is persuaded to reach a different conclusion premised on the reasoning of the district courts in *Simonia*, *Williams*, *Anderson v. Quad/Graphics*, and *Hunley*, *supra*. Hartford effectively "stepped into the shoes" of CNAGLA when it purchased that entity from CCC, and therefore obtained CNAGLA's discretionary authority to determine whether Plaintiff remained eligible for benefits after December 18, 2005. Accordingly, the court will review Hartford's decision to terminate Plaintiff's benefits under the arbitrary and capricious standard of review. Plaintiff's Motion for Summary Judgment on Standard of Review is due to be denied. An appropriate Order will be entered contemporaneously herewith.

**DONE**, this 11th day of March, 2011.

*/s/ John E. Ott*

**JOHN E. OTT**
United States Magistrate Judge