FILED

2011 Oct-26  PM 02:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **DEWAYNE WHITE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **4:09-cv-02384-JEO** |
| **HARTFORD LIFE AND ACCIDENT** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

DeWayne White ("plaintiff") brings this action against Hartford Life and Accident

Insurance Company ("Hartford") under the Employee Retirement Income Security Act of 1974,

29 U.S.C. §§ 1001 *et seq*. ("ERISA"), to challenge Hartford's decision to discontinue his long-

term disability benefits.  The action is now before the court on plaintiff's Motion for Judgment

on the Record, doc. 30; plaintiff's Renewed Motion to Remand, doc. 31; defendant's Motion for

Summary Judgment, doc. 33, and plaintiff's Motion to Strike, doc. 36.  For the reasons stated in

this Memorandum Opinion, plaintiff's Motion for Judgment on the Record and Motion to

Remand are due to be DENIED, defendant's Motion for Summary Judgment is due to be

GRANTED, and plaintiff's Motion to Strike is due to be GRANTED.

**Plaintiff's Motion to Remand, or in the Alternative, Motion to Supplement the Record**

Plaintiff requests that this court remand the case to Hartford for consideration of

evidence his counsel submitted to Hartford after the denial of his administrative appeal on

February 25, 2009.  (Doc. 31).  Alternatively, plaintiff requests this court's permission to

supplement the administrative record.  The additional evidence includes: (1) a July 7, 2009, letter

from plaintiff's counsel to Hartford; (2) a September 8, 2009, letter from plaintiff's counsel to

Hartford; (3) an August 27, 2009, Social Security Disability questionnaire from plaintiff's family

physician, Dr. Royse; (4) certain medical records from April 2007 through November 2009 from

plaintiff's oncologist, Dr. McGee; (5) a January 14, 2010, letter from plaintiff's counsel to

Hartford; (6) additional medical records from August 2008 through November 2009 from Dr.

McGee; (7) a December 29, 2009, Social Security Disability questionnaire from Dr. McGee; and

(8) a July 11, 2009, letter from Hartford to plaintiff's counsel.  (Docs. 31-1 – 31-6).

Hartford objects to a remand or supplementation of the record on the ground that this

court's review of its benefits decision is limited to the administrative record.  Hartford notes that

plaintiff has exhausted his administrative remedies and that his efforts to obtain "a second bite of

the apple through remand" are improper.  This court agrees.  As the Honorable Karon O. Bowdre

observed in *Ray v. Sun Life & Health Insurance Co.*, 752 F. Supp. 2d 1229 (N.D. Ala. 2010), "if

the plan had such a duty [to continue to consider additional documents], the process of deciding

each claim for benefits under ERISA could continue *ad infinitum*, or as long as the plaintiff

continued to have doctor or hospital visits and chose to submit additional documents for

consideration."  752 F. Supp. 2d at 1234.

Additionally, allowing plaintiff the opportunity to supplement the record is not

appropriate.  "[T]he function of the court is to determine whether there was a reasonable basis for

the [claims] decision, *based upon the facts as known to the administrator at the time the decision

was made*."  *Glazer v. Reliance Standard Life Ins. Co.,* 524 F.3d 1241, 1246 (11th Cir. 2008)

(emphasis added) (quoting *Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1139 (11th

Cir. 1989)).  Thus, allowing plaintiff to supplement the administrative record at this stage of the

litigation would circumvent the function of this court.

Plaintiff cites several cases in support of remand, including *Levinson v. Reliance Standard Life Insurance Co.*, 245 F.3d 1321 (11th Cir. 2001), which the court finds unpersuasive.  In *Levinson*, the Eleventh Circuit considered a plan administrator's argument that the case should be remanded for consideration of new evidence, including an independent medical opinion the plan administrator obtained in support of its summary-judgment motion.  In deciding the issue, the Eleventh Circuit looked for guidance from other courts and found the Eighth Circuit's opinion in *Davidson v. Prudential Insurance Co. of America*, 953 F.2d 1093 (8th Cir. 1992), persuasive.  There, the Eighth Circuit refused the plaintiff's request for remand to the plan administrator, holding that "if [plaintiff] believed the evidence he now offers was necessary for the [plan administrator] to make a proper benefits determination, [plaintiff] should have obtained this evidence and submitted it to the [plan administrator]."  953 F.2d at 1095.  Applying this analysis in *Levinson*, the Eleventh Circuit affirmed the district court's refusal to remand by noting that the plan administrator neglected its opportunities to establish an administrative record before the litigation commenced.  245 F.3d at 1328.

Here, *Levinson* does not aid plaintiff because he appears to have neglected his opportunity to supplement the record during the appeal process.  Plaintiff notes that he was not represented by counsel on appeal.  However, this court does not find that this fact should alleviate plaintiff's duty to establish an administrative record.

Plaintiff also cites *Shannon v. Jack Eckerd Co.*, 113 F.3d 208, 210 (11th Cir. 1997), for the proposition that a plan administrator has a continuing duty to review all available evidence. In *Shannon*, the district court remanded the case to the plan administrator for consideration of

3

subsequently available evidence *after* finding that the denial of benefits was arbitrary and capricious, and the Eleventh Circuit found no error in the remand.  *Id.*  Thus, *Shannon* does not stand for the proposition that this court must remand for consideration of post-denial evidence absent a finding that Hartford's denial was arbitrary and capricious.  Noting this distinction, *Shannon* is inapplicable here because, as discussed below, Hartford's decision was not arbitrary and capricious.

Plaintiff further cites *Torres v. Pittson Co.*, 346 F.3d 1324 (11th Cir. 2003), to assert that the Eleventh Circuit has "implied" that consideration of subsequently submitted evidence is required even if submitted after litigation commences.  (Doc. 31 at 7).  However, in *Torres* the Eleventh Circuit vacated the district court's denial of the plaintiff's motion to supplement the record and remanded the issue to the district court because of a lack of discussion of the issues from the parties and district court.  346 F.3d at 1334-35.  Thus, the Eleventh Circuit did not affirm or reverse the district's ruling on the plaintiff's motion to supplement the record.

For all these reasons, the motion to remand, or, alternatively, supplement the administrative record, is due to be denied.

### Cross Motions for Judgment on the Record/Summary Judgment

The court now turns to plaintiff's Motion for a Judgment on the Record, (doc. 30), and defendant's Motion for Summary Judgment, (doc. 33).

As an initial matter, plaintiff moves to strike Hartford's submission of the declaration of Joseph F. Maggio.  (Doc. 36).  Plaintiff contends that the declaration is due to be stricken because Hartford failed to disclose the declaration and Maggio's identity as a witness in advance of its summary-judgment motion.  (*Id.* at ¶ 1).  Hartford declined to respond to the motion, and

the court finds that the declaration is immaterial to its analysis.  Therefore, the motion is due to be granted and Maggio's declaration is stricken.

**FACTUAL BACKGROUND**

**A.      The Plan**

Plaintiff worked at a steel foundry, Magotteaux, Inc., which sponsored an ERISA-governed Group Long-Term Disability Plan ("the Plan").  (Doc. 34-1 at 3 ¶ 3).  Plaintiff participated in the Plan and applied for long-term disability benefits when he received a leukemia diagnosis in 2003.  (Doc. 30-2 at 1).  Hartford served as the plan administrator and awarded plaintiff benefits with an effective date of December 18, 2003.[1]  (*Id.*)

Under the terms of the Plan, Hartford paid plaintiff long-term disability benefits from December 18, 2003, until December 18, 2005.  (Doc. 30-13 at 3).  The Plan provides that plaintiff would qualify for continuing benefits after December 18, 2005, if he was unable to perform *any* occupation for which he was qualified.  (*Id.*)  Specifically, the Plan provides:

> After the [long-term disability] Monthly Benefit has been payable for 24 months, "Disability" means that Injury or Sickness causes physical or mental impairment to such a degree or severity You are:
>
> 1.      continuously unable to engage in any occupation for which You are or become qualified by education, training or experience; and
>
> 2.      not Gainfully Employed.

(Doc. 34-4 at 126).  The Plan places the burden of proving "Disability" on the claimant and requires that certain evidence "must be a part of *Your* proof of loss," including, "[o]bjective

---

[1]Hartford's acquisition of the Plan is detailed in this court's March 11, 2011, Memorandum Opinion on plaintiff's Motion for Summary Judgment on Standard of Review.  (Doc. 28).  Additionally, of note, in January 2004, the Social Security Administration determined that plaintiff was disabled as of September 19, 2003, and awarded him disability income benefits.

medical findings which support *Your Disability*." (*Id*. at 138) (emphasis in original). The Plan explains: "Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for *Your* disabling condition(s)." *Id*. (emphasis in original). Further, the Plan warns that failure to produce the requisite evidence "may delay, suspend or terminate *Your* benefits." *Id*. (emphasis in original).

**B.      Continuation of Benefits**

Hartford received annual Disability Claimant Questionnaires from plaintiff and Attending Physician Statements of Disability from plaintiff's oncologist, Dr. Phillip McGee, in support of continuing benefits. On the Disability Claimant Questionnaires from February 2005, 2006, and 2007, plaintiff indicated that "pain in knees and hips" prevented him from sitting or standing for long periods of time and that he was not able to walk long distances due to fatigue. (Doc. 34-4 at 33, 47, 63). Similarly, Dr. McGee's statements from 2005 to 2008 provided that plaintiff's leukemia was in remission since, but that plaintiff suffered from fatigue and pain in his hips and knees since undergoing chemotherapy for his leukemia. (Doc. 34-4 at 61-62).

In 2006, Dr. McGee reported that, due to pain in plaintiff's hips and knees, plaintiff was limited to the following: standing for 30 minutes, walking 200 to 300 yards, siting for 45 minutes, lifting/carrying 10 to 15 pounds, pushing or pulling 0.0 weight, and driving for 30 minutes to 1 hour. (*Id*.) In 2007, Dr. McGee reiterated that plaintiff's leukemia was in remission, but that plaintiff suffered from fatigue, insomnia, high blood pressure, and arthritic pain. (Doc. 34-4 at 59). On the 2007 form, Dr. McGee essentially repeated his restrictions and limitations from the previous year, stating that plaintiff could stand for 30 minutes, walk 200 yards, sit for 30 minutes, lift or carry 0.0 weight due to "chronic arthritic pain in hips and knees,"

6

and push and pull 0.0 weight. (*Id*. at 60). He also added that plaintiff was able to perform activities of daily living, but "not able to perform productive work." (*Id*.)

In the spring of 2008, Hartford began looking more closely at plaintiff's capacity to work. Specifically, in May 2008, Hartford requested the contact information for plaintiff's treating physicians and interviewed plaintiff over the telephone. Hartford also asked plaintiff to submit additional information, including new information about his disability, a claimant questionnaire, a Social Security Administration consent form, an authorization to disclose health information, and a work and education history form. (Doc. 34-2 at 67). In the telephone interview, plaintiff reported that his leukemia was in remission, that he had not undergone chemotherapy in two years, and that he did not have futher radiation or chemotherapy planned. (*Id*. at 29-30). Additionally, plaintiff told a Hartford representative that he could do all activities of daily living, sit or stand for 20-30 minutes, took medication for pain in his knees and hips, and slept little due to the pain. (*Id*. at 30).

## C.    Dr. McGee's Records for Plaintiff

Plaintiff had only two treating physicians, Dr. McGee, an oncologist, and Dr. Royse, a family physician, and in July 2008, Hartford requested that each of them submit: "Any and all of [plaintiff's] medical records, dated 6/1/07 to present, including clinic notes, procedure reports, consultation reports, diagnostic test results, treatment notes, laboratory notes, etc; and a Completed Attending Physician Statement." (Doc. 34-2 at 181, 197).

Dr. McGee submitted his notes from plaintiff's office visits from April 2007 to March 2008. His notes from April 2007, state that plaintiff "continues remission" and "is doing quite well, maintaining activity with his son, playing baseball. He continues on Lorcet with his

primary care physician Dr. Royse, approximately four times a day."  (Doc. 34-3 at 184).  As to

plaintiff's "arthritis pain," Dr. McGee wrote: "Continues p.r.n. Lorcet as mentioned above.  I

believe this will be an ongoing matter.  As long as he is able to 'scale back' from time to time if

he starts to escalate his dose, I think this can be managed."  (*Id*.)  And as to "fatigue," Dr. McGee

wrote: "Chronic and worsened slightly with most recent activity."  (*Id*.)

Dr. McGee's notes from July 2007, state that plaintiff "has done fairly well so far.  He

still complains of some moderate fatigue with some joint pain which continues to be palliated

with his primary care physician."  (Doc. 34-4 at 6).  A handwritten update from October 2007 on

the July 2007 record notes that plaintiff's fatigue and joint pain were unchanged.  (*Id*.)  Dr.

McGee's formal notes from October 2007, state: "[Plaintiff] is doing quite well, performing

activities of daily living with no difficulty.  He continues on p.r.n. Lortab."  (Doc. 34-4 at 5).

During a March 2008 visit, Dr. McGee noted that plaintiff was approaching the five-year

anniversary of remission from leukemia and that "[plaintiff] is doing well, performing activities

of daily living with minimal difficulty.  He continues on p.r.n. Lortab for arthralgias...."  (Doc.

34-4 at 4).  In March 2008, Dr. McGee also completed an Attending Physician's Statement of

Continuing Disability, indicating that plaintiff could lift/carry up to 10 pounds occasionally,

never bend at the waist, never kneel, and drive frequently.  (Doc. 34-2 at 199-200).  In response

to an inquiry regarding duration of the listed restrictions and limitations, Dr. McGee wrote that

"conditions will remain the same."  (*Id*.)

**D.       Dr. Royse's Records for Plaintiff**

Dr. Royse submitted records reflecting plaintiff's negative chest x-ray in September 2006,

and his office visits in December 2007, and June 2008.  (Doc. 34-2 at 185-96).  The notes from

December 2007, show that plaintiff presented hypertension and anxiety for which Dr. Royse prescribed Lisinopril, Cyclobenzaprine, and Lexapro. (*Id*. at 193). In June 2008, plaintiff sought treatment for elbow pain, which Dr. Royse noted was "aggravated by elbow extension, pronation, supination, and [that] [c]asting while fishing causes pain." (*Id*. at 194). Dr. Royse prescribed plaintiff Relafen for two weeks and continued his prescription of Lortab and Cyclobenzaprine for "diffuse degenerative arthritis." (*Id*. at 196).

## E.    Termination of Benefits

After reviewing plaintiff's records, Hartford believed that plaintiff may have been able to return to full-time work in a sedentary to light capacity and, therefore, wrote Dr. McGee and Dr. Royse in September 2008 for clarification of plaintiff's work capacity. (Doc. 34-2 at 56). In the letter to Dr. McGee, Hartford recounted his notes from plaintiff's most recent office visit (March 2008) and wrote "[b]ased on the above information we feel, from an oncology standpoint, that [plaintiff] would be able to return to full time work in a sedentary to light capacity." (*Id*. at 1). Hartford then provided Dr. McGee descriptions of the sedentary and light capacity work requirements and asked him to check a box indicating his agreement that plaintiff could perform either sedentary or light capacity occupations, or to explain why he believed plaintiff could not return to full-time work in either capacity. (*Id*.) Dr. McGee checked the box to indicate that plaintiff could perform sedentary work, which Hartford had defined as "sitting most of the time with intermittent periods of standing/walking as needed and involves lifting up to 10 lbs. occasionally. Sedentary may involve using upper extremities frequently. Please understand that frequently does not imply and/or mean repetitively." (*Id*.)

Hartford also wrote Dr. Royse in September 2008, recounting his notes from plaintiff's

most recent office visit (June 2008), and asking Dr. Royse whether he believed that plaintiff could return to full-time work in a sedentary or light capacity.  (Doc. 30-11).  Dr. Royse also checked the box to indicate that plaintiff was capable of performing full-time sedentary work. (*Id*. at 1-2).

After receiving responses from Dr. McGee and Dr. Royse, Hartford produced an employability analysis using plaintiff's work experience, educational history, prior job description from Magotteaux, and ability to perform sedentary work.  (Doc. 34-2 at 134-35).  A Hartford rehabilitation case manager determined that plaintiff was capable of performing sedentary occupations such as "stuffer" and "waxer."  (*Id*.)  The case manager also found that these positions constitute gainful employment and are prevalent in the national economy.  (*Id*.)

Accordingly, by letter dated October 31, 2008, Hartford terminated plaintiff's long-term disability benefits on the basis that he "no longer [met] the definition of disability as defined by the policy."  (Doc. 34-2 at 128).  Hartford supported it decision by recounting plaintiff's medical records and Dr. McGee's and Dr. Royse's indication that plaintiff was capable of performing full-time, sedentary work.  (*Id*.)

## F.     The Appeal Process

Plaintiff timely appealed Hartford's termination of his benefits with a note stating, "I am not able to work at any position and want my benefits back."  (Doc. 30-14).  In support of the appeal, plaintiff submitted a January 12, 2009, letter from Dr. Royse stating:

> This [letter] is to amend my previous comments on [plaintiff's] physical ability to work.  I have cleared this with [Dr. McGee] and [plaintiff] has continuous pain due to his Diffuse Degenerative Arthritis.  In his case, this is moderately severe pain with this.  He is not in any way physically able to work any kind of position.

(Doc. 30-14 at 2).  Plaintiff also submitted a functional capacity evaluation ("FCE") conducted

on November 24, 2008, which found plaintiff as capable of standing for 7 minutes, sitting for 4

minutes, walking for 0.0 miles, carrying 5 pounds, unable to lift any weight, unable to perform

any pushing or pulling, and able to climb up and down 1 flight of stairs.  (*Id.* at 2-4).  The

physical therapist who conducted the FCE summarized plaintiff's physical abilities as follows:

> Based on the strength classification as established by the Dictionary of
> Occupational Title, [plaintiff] is currently unable to return to work at any capacity.
> He is not capable of lifting anything at all.  His maximum carrying capacity is 5.0
> pounds.  According to the DOT-RFC battery, [plaintiff] must be capable of
> meeting the Demand Minimum Function Capacity for both lifting and carrying
> strength categories in order to return to work at any capacity.

(*Id.* at 5).

Upon receipt of Dr. Royse's letter and the FCE, Hartford requested objective test results

from Dr. Royse, including "any x-rays, CT scans, or MRIs, which document the severity of

[plaintiff's diffuse degenerative arthritis]."  (Doc. 34-2 at 120).  Hartford specifically asked, "Has

any objective testing been done?" and requested a copy of any test results and any office visit

notes from July 2008 to the present.  (*Id.*)

Dr. Royse forwarded his notes from plaintiff's visits from September 2008 through

January 2009.  (Doc. 34-2 at 101-08).  The notes from September 2008, state that plaintiff

reported "moderately severe" pain in his hips and knees with "joint stiffness, 'gelling' of joints

after periods of inactivity and crepitation [and] denie[d] associated swelling, redness, warmth, or

deformity." (Doc. 34-2 at 101).  During a November 2008, visit, Dr. Royse repeated his notes

from September 2008, and added that plaintiff reported that "he lays down for a few hours each

day claiming that if he does not that his pain becomes too intense."  (Doc. 34-2 at 104).  In

January 2009, Dr. Royse noted the FCE findings and wrote that he "will assist patient in whatever capacity we need to to obtain his disability benefits."  (Doc. 34-2 at 108).

**G.      Peer Reviews**

As part of its appeal review, Hartford asked an entity known as MES Solutions to obtain peer-review opinions of plaintiff's work capacity from an oncologist and a rheumatologist.  (Doc. 34-2 at 96-98).  MES Solutions had Dr. Lee Hartner, a board certified internist with subspecialities in hematology and medical oncology, review plaintiff's records from an oncology perspective, and Dr. Mark Burns, board certified internist with a specialty in rheumatology, review plaintiff's records from a rheumatology perspective.  (Doc. 30-17).  Dr. Hartner noted that plaintiff's leukemia had been in remission since plaintiff received chemotherapy and that plaintiff had "severe arthalgias that could be related to prior chemotherapy."  (*Id*. at 1).  Dr. Hartner spoke with Dr. McGee, who he noted "does not feel that he could assign a specific disability level as in his opinion this is a subjective symptom."  (*Id*.)  After reviewing plaintiff's medical records and talking with Dr. McGee, Dr. Hartner determined:

> For the period 10/31/08 to present, [plaintiff] had no physical restrictions or limitations from a hematological/oncology perspective.
>
> Based on the submitted records and my conversation with his treating oncologist, this claimant's major symptom is joint pain, particularly in his back, hips, and knees.  This has been attributed to diffuse osteoarthritis.  While his treating oncologist feels that this could potentially be related to his prior chemotherapy, the submitted records do not clearly establish any causal relationship.  Therefore, at the present time he does not appear to be physically impaired from a hematologic perspective, as his major issues are related specifically to the joint pains.

(Doc. 30-17 at 2).  As to plaintiff's capacity for work activities from October 31, 2008, to present, Dr. Hartner opined: "He is not restricted in any capacity due to his prior leukemia or

chemotherapy treatment.  While he does seem to have some evidence of limitation due to

osteoarthritic, I would defer assessment of this to the appropriate specialist." (*Id*.)  Lastly, as to

the FCE findings, Dr. Hartner wrote:

> While it is impossible to state with certainty, the submitted records do not support
> this work restriction.  [Plaintiff] has complained of arthritis, but there has never
> been any indication of significant muscle weakness.  Furthermore, there was no
> assessment of effort and compliance made as part of the Functional Capacity
> Evaluation.  Even in the setting of severe arthritis, he should have been able to lift
> 5-10 pounds on at least an occasional basis.  His records indicate that he has
> intermittent joint pains for which he takes Lortab as needed.  This certainly does
> not seem to indicate debilitating arthritis and pain.  Additionally, according to his
> treating oncologist, he has mild joint pains, rated as grade 1.  Therefore, I do not
> agree with the Functional Capacity Evaluation, since the result of this test stand in
> stark contrast to the other available information.

(*Id*.)

Dr. Burns spoke with Dr. Royse on February 17, 2011, and asserts that Dr. Royse stated

that he agreed with FCE's conclusions and asserted that plaintiff suffered from constant pain,

especially in his back, and has problems with endurance and repetitive activities.  (Doc. 30-17 at

3).  Dr. Burns then reviewed the records and concluded:

> For the period of 10/31/08 to the present, [plaintiff] has no physical restrictions
> and limitations.
>
> The medical problems that have been documented do not cause inherent
> impairment.  The degree of impairment would vary from case to case.  The FCE
> in this case notes a degree of impairment that would interfere even with basic
> [activities of daily living].  There is no documentation of a disease process or
> physical findings that would support such a severe degree of impairment.  The
> record otherwise does not support any impairment.

(*Id*. at 4).  As to plaintiff's capacity for work activities from October 31, 2008, to the present, Dr.

Burns stated: "Considering [plaintiff's] overall medical situation and functionality, he has no

restrictions and limitations during the period of 10/31/08 to the present in terms of Dept. of

Labor work categories.  Based on the available documentation the claimant would be capable of any work classification."  (*Id*.)  Dr. Burns specifically noted that "the medical problems that have been documented do not cause inherent impairment.  The degree of impairment would vary from case to case."  (*Id*.)  With respect to the FCE, Dr. Burns stated:

> Based on the medical evidence provided, I do not agree with the Residual Function Capacity test report finding that [plaintiff] is unable to work in any capacity.

> Other than the FCE, there is no documentation that supports such a severe degree of impairment.  [Plaintiff's] exams have been normal, and there is no supporting information justifying this degree of impairment.

(*Id*.)

**H.     Denial of Appeal**

By letter dated February 25, 2009, Hartford informed plaintiff that it would uphold its termination decision on appeal.  (Doc. 34-2 at 42).  The letter explains Hartford's decision, stating: "While you may have pain symptoms due to diffuse degenerative arthritis, either from chemotherapy treatment or from an independent disease process, there is no evidence that this condition is of such severity that you are unable to perform primarily sedentary (seated) level work activities."  (Doc. 34-2 at 44).  The letter also informs plaintiff that all administrative remedies offered by the plan had been exhausted and, therefore, the decision was final and binding.  (*Id*. at 45).

**I.     Post-Appeals Correspondence**

After Hartford denied his appeal, plaintiff retained counsel.  In a letter to Hartford dated July 7, 2009, plaintiff's counsel stated that "there is very strong evidence of disability" and that he intended to secure and provide to Hartford additional medical records in support of plaintiff's

claim.  (Doc. 30-19).  Hartford responded on July 11, 2009, informing plaintiff's counsel it

would not review any additional information in support of plaintiff's claim because plaintiff had

exhausted the administrative remedies provided by ERISA and the Plan.  (Doc. 30-20).  In a

letter dated September 8, 2009, plaintiff's counsel sent additional post-appeal medical records to

Hartford.  (Doc. 30-21).  Hartford returned the medical information to plaintiff's counsel,

referencing its July 2009, correspondence and notifying plaintiff's counsel that Hartford would

neither review the post-appeal submission, nor add the submission to plaintiff's file.  (Doc. 30-

22).

## STANDARD OF REVIEW

Because ERISA itself provides no standard for courts reviewing the benefits decisions of

plan administrators, the Eleventh Circuit created a six-step review process in *Williams v.*

*BellSouth Telecommunications, Inc.*, 373 F.3d 1132 (11th Cir. 2004).  Since *Williams*, the first

five steps have remained unchanged while the sixth step has been modified in light of

*Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 128 (2008).  The post-*Glenn* process

sets out the following six steps:

> (1) Apply the *de novo* standard to determine whether the claim administrator's
> benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the
> administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine
> whether he was vested with discretion in reviewing claims; if not, end judicial
> inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with
> discretion in reviewing claims, then determine whether "reasonable" grounds
> supported it (hence, review his decision under the more deferential arbitrary and
> capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blakenship v. Metropolitan Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011).

Plaintiff previously filed a "Motion for Summary Judgment on Standard of Review," asserting that the Plan does not grant Hartford discretionary authority to determine benefits eligibility and, therefore, the court should review Hartford's decision under a *de novo* standard only. (Doc. 19 and 22). Hartford responded that the Plan grants it discretion to determine whether plaintiff remained eligible for benefits after December 18, 2005, and, therefore, the standard of review should be arbitrary and capricious. (Doc. 21). After extensive briefing and review, this court found that Hartford has the discretionary authority to determine plaintiff's benefits eligibility and, therefore, "the court will review Hartford's decision to terminate Plaintiff's benefits under the arbitrary and capricious standard of review." (Doc. 28 at 10).

## DISCUSSION

### A.    Step One: Was the Hartford's Decision Wrong?

The *Williams* framework requires the court to first examine whether Hartford's termination of continuing benefits was *de novo* wrong. *See Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1232 (11th Cir. 2006) ("regardless of whether arbitrary and capricious review or the heightened form of that standard of review applies, the court reviews *de novo* the claims administrator's interpretation of the plan to determine whether it is 'wrong'"). The

Eleventh Circuit has explained:

> *De novo* review, which we employ in reviewing "no-discretion" plan decisions, offers the highest scrutiny (and thus the least judicial deference) to the administrator's decision.  In fact, we accord no deference there, since, no judgment/discretion was exercised in making the determination (*i.e.*, there is no discretion to which we would defer).

*Williams*, 373 F.3d at 1137.  "A decision is 'wrong' if, after *de novo* review, 'the court disagrees with the administrator's decision.'"  *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1196 (11th Cir. 2010) (citing *Williams*, 373 F.3d at 1138).  In making such a determination, the court is limited to the administrative record that was before the administrator when it made its decision.  *See Glazer*, 524 F.3d at 1246.

Here, a *de novo* review of the administrative record presents a close question as to whether plaintiff was disabled under the Plan after October 31, 2008.  On one hand, Dr. Royse opines that plaintiff is "not in any way physically able to work any kind of position," and the records from Dr. McGee and Dr. Royse show that plaintiff has suffered from arthritic pain in his knees and hips since receiving chemotherapy for this leukemia and that the pain prevents him from walking more than 200 yards, kneeling, lifting more than 10 pounds, and pushing and pulling any weight.  (Doc. 30-14 at 2).  These reports are supported by the FCE in which a physical therapist opined that plaintiff is "currently unable to return to work at any capacity," and the Social Security Administration's finding of disability.  (Doc. 30-14 at 5).  However, on the other hand, the Plan states that a claimant "must" produce "objective medical findings" in support of disability, and the administrative record lacks any x-rays, MRIs, or other objective medical tests to indicate arthritis, significant muscle weakness, or pain.  (Doc. 34-4 at 138).  Indeed, Dr. Hartner and Dr. Burns both noted that plaintiff's records do not indicate debilitating

arthritic pain or the degree of impairment indicated by the FCE.  (Doc. 30-17).  Further, Dr. Harter and Dr. Burns both question the accuracy of the FCE and note that it contrasts with (1) plaintiff's admission that he could perform activities of daily living such as dressing and feeding himself and (2) Dr. McGee's and Dr. Royse's notes indicating that plaintiff played baseball with his son around April 2007 and fished in June 2008.  (Docs. 34-2 at 194 and 34-3 at 184).  Lastly, the records indicate that plaintiff managed his arthritis and joint pain with non-steroidal anti-inflammatory drugs and Lortab and that he did not see a pain medicine specialist, orthopedist, or rheumatologist for treatment of his arthritis.

Because the Plan expressly requires a claimant to produce "objective medical findings" supporting his disability and warns that failure to do so may result in the termination of benefits, this court cannot say that Hartford's decision to terminate continuing benefits was wrong.  Upon careful review of the administrative record, the court finds that plaintiff simply lacks objective medical findings that he is incapable of full-time, sedentary work.  Moreover, even if Hartford's denial of benefits could be regarded as *de novo* wrong, as discussed below, the decision was not arbitrary and capricious.

## B.      Step Two:  Did Hartford have discretion?

As previously determined on plaintiff's motion for summary judgment on the standard of review, Hartford had discretion to make benefit determinations under the Plan.  (Doc. 28 at 10). Therefore, Hartford's decision to terminate plaintiff's benefits is reviewed under the arbitrary and capricious standard.  (*Id*.)

## C.      Step Three:  Was Hartford's decision reasonable?

Because the arbitrary and capricious standard applies, the court considers whether

Hartford's decision to terminate plaintiff's benefits was reasonable. The Eleventh Circuit has established that, as long as there is a reasonable basis for a decision, "'it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision.'" *White v. Coca-Cola Co.*, 542 F.3d 848, 856 (11th Cir. 2008) (quoting *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989)). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Fin. Cos. Retirement Plans*, 887 F.2d 689, 693 (6th Cir. 1989) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)).

Plaintiff asserts that Hartford's decision was unreasonable because it was not the product of a principled and deliberative process. Hartford responds that it carefully considered the administrative record and that its decision is reasonable in view of plaintiff's lack of objective medical findings demonstrating his disability. While the court recognizes that there is evidence that would support a contrary decision, the court cannot find, based on the administrative record, that Hartford's determination was unreasonable. Hartford's correspondence with plaintiff and his treating physicians indicates that it reviewed the medical records submitted, asked for evidence of objective tests demonstrating arthritis, and reasonably relied upon the opinions of independent medical professionals in finding a lack of objective medical findings as to the debilitating nature of plaintiff's condition. Accordingly, this court cannot find that Hartford's decision was arbitrary or capricious.

**D.      Steps Four, Five, and Six:  Conflict of Interest**

Because Hartford both makes eligibility decisions and pays benefits from its own funds, the court must consider whether this conflict of interest tainted Hartford's decision. The weight

19

of the conflict of interest varies based on its "inherent or case-specific importance." *Glenn*, 554

U.S. at 117.  And even when a conflict of interest exists, the Eleventh Circuit has emphasized

that "courts still 'owe deference' to the plan administrator's 'discretionary decision-making' as a

whole." *Blakenship*, 644 F.3d at 1355 (quoting *Doyle*, 542 F.3d at 1363).  Ultimately, "the plan

administrator's interpretation of the plan 'will not be disturbed if reasonable.'"  *Conkright v.*

*Frommert*, --- U.S.---, 130 S. Ct. 1640, 1651 (2010) (quoting *Firestone*, 489 U.S. at 101).

 "[T]he burden remains on the plaintiff to show the decision was arbitrary; it is not the

defendant's burden to prove its decision was not tainted by self-interest." *Doyle*, 542 F.3d at

1360.  Here, plaintiff contends that the effect of the conflict is evidenced by the following:  (1)

the alleged inconsistent positions of the Hartford and the predecessor Plan administrator; (2)

Hartford's disregard for plaintiff's treating physicians in favor of peer reviewers; (3) plaintiff's

receipt of Social Security benefits; (4) Hartford's termination of benefits shortly after assuming

the claim from predecessor Plan administrator; (5) Hartford's refusal to consider additional

evidence after the appeal; (6) Hartford's alleged history of abusing its discretion in denying

claims; and (7) Hartford's alleged belated attempt to claim that plaintiff failed to submit

objective evidence of disability.  (Docs. 32 and 37).  Upon careful consideration, the court finds

that these facts and allegations, either alone or in combination, do not show that Hartford's

decision was tainted by self-interest.

 First, Hartford has consistently stated that it terminated plaintiff's benefits because

plaintiff's submissions and medical records did not demonstrating his continuing disability under

the terms of the policy.  In the initial denial letter of October 31, 2008, Hartford stated that it had

reviewed the "tests, procedures or clinical examinations," and "investigated whether [plaintiff]

could perform the duties of Any Occupation" in determining that plaintiff "no longer [met] the definition of disability as defined by the policy."  (Doc. 34-2 at 128-33).  In the February 25, 2009, letter denying plaintiff's appeal, Hartford similarly stated:

> The medical findings provided to us do not support that your condition or reported symptoms are of such severity that you are rendered incapacitated and continuously unable to engage in any occupation after 10/30/08, as is required by the LTD policy for disability benefits to continue beyond that date.

(*Id*. at 42).  Notably, some change in Hartford's reasoning for the denial should be expected because, between the October 31, 2008, decision and plaintiff's appeal, Dr. Royse changed opinion position as to plaintiff's ability to perform sedentary work.  Ultimately, the fundamental reason for the denial remained the same—a lack of objective proof of disability as defined by the Plan.  Simply, the court finds no change in the Hartford's reasoning that indicates self-interest tainted Hartford's decision.

Second, Hartford's use of peer reviewers rather than in-person examinations and its alleged history of abuse using peer reviews does not indicate that its conflict influenced its decision.  The Eleventh Circuit has recently reiterated its position that no inherent problems exist when a plan administrator relies upon a file review by a qualified physician to make a benefits determination.  *See Blankenship*, 644 F.3d at 1356 ("the plan administrator may give different weight to ... opinions [from its independent doctors] without acting arbitrarily and capriciously"); *Gipson v. Admin. Comm. of Delta Air Lines, Inc.*, 350 Fed. App'x 389, 395 (11th Cir. 2009) ("A plan administrator has no obligation to give a treating physician's opinion more weight.").  Further, plaintiff's reliance on two cases from California to assert a history of abuse by Hartford in its use of peer reviewers is unpersuasive in this case.  *See Caplan v. CNA FinancialCorp.,* 544

F. Supp. 2d 984 (N.D. Cal. 2008); *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623 (9th Cir. 2009). These cases are unpersuasive because Eleventh Circuit law differs from Ninth Circuit law on the issue of reliance on peer reviewers over treating physicians, and plaintiff has failed to produce evidence indicating how Hartford's relationship with MES Solutions led to a tainted decision or that MES Solutions had a significant financial incentive to produce peer reviewers who were favorable to Hartford. As the Tenth Circuit noted in *Rizzi v. Hartford Life and Accidence Insurance Co.*, 383 Fed. App'x 738, 750 (10th Cir. 2010), "[g]eneral accusations of bias against [peer reviewers] do not provide a reason to doubt what otherwise appear to be competent and reasonable opinions." The court finds nothing in the administrative record or Eleventh Circuit caselaw to show that Hartford acted unreasonably in relying on the opinions of Dr. Hartner and Dr. Burns, or in giving more weight to their opinions.

Third, the fact the Social Security Administration awarded plaintiff benefits in 2003 does not evidence that Hartford's conflict tainted its decision. Indeed, Hartford's initial decision in 2003 to award long-term disability benefits is consistent with the Social Security Administration's disability determination. Unlike social security, the Plan places the burden on the claimant to prove continuing disability. Thus, Hartford's denial is not inconsistent with the Social Security Administration's determination.

Lastly, the court sees no merit to plaintiff's arguments that Hartford's termination of benefits shortly after assuming the claim from the predecessor plan administrator and its refusal to consider evidence submitted after the appeal process demonstrate that conflict factored into its decision. Hartford has no duty to consider evidence submitted after its decision on appeal, and the court finds nothing in the administrative record to indicate that Hartford acted unreasonably

in considering the nature of plaintiff's disability after acquiring his claim.

In sum, the lack of objective evidence demonstrating a disability as defined by the Plan, and the lack of evidence that the conflict influenced Hartford's decision gives little support to a finding that the benefits decision was arbitrary or capricious.  Plaintiff has not sufficiently shown, and this court's review of the record has not indicated, that the structural conflict of interest in this case had sufficient "inherent or case-specific importance." *Glenn*, 554 U.S. at 117. Therefore, Hartford's motion for summary judgment is due to be GRANTED and plaintiff's motion for judgment on the record is due to be DENIED.

## CONCLUSION

For all these reasons,  plaintiff's Motion for Judgment on the Record and Motion to Remand are due to be DENIED, defendant's Motion for Summary Judgment is due to be GRANTED, and plaintiff's Motion to Strike is due to be GRANTED.  An appropriate order will be entered contemporaneously herewith

**DONE**, this the 26th day of October, 2011.

**JOHN E. OTT**
United States Magistrate Judge

23